**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TEAMSTERS LOCAL UNION NO. 727 | ) | |
| HEALTH AND WELFARE FUND, | ) | |
| TEAMSTERS LOCAL UNION NO. 727 | ) | |
| PENSION FUND, and TEAMSTERS | ) | |
| LOCAL UNION NO. 727 LEGAL AND | ) | |
| EDUCATIONAL ASSISTANCE FUND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 19 C 6082 |
| | ) | |
| DE LA TORRE FUNERAL HOME & | ) | |
| CREMATION SERVICES, INC., MELITA | ) | |
| INCORPORATED d/b/a LOGAN SQUARE | ) | |
| FUNDERAL HOME, ROSA DE LA | ) | |
| TORRE, VIOLETA DE LA TORRE, and | ) | |
| EDWARD DE LA TORRE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants-in-part and denies-in part Plaintiffs' Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment.

## BACKGROUND

### I.    Local Rule 56.1 Compliance

Before getting into the facts, two things must be addressed.  First, the Court denies Defendants' motion for summary judgment because Defendants failed to file a Local Rule 56.1(a)(2) statement of facts.  *See* LR 56.1(a)(3) (failure to comply with LR 56.1(a)(2) "may be grounds for denial of the motion").  While this may seem like a harsh result, "[i]f parties fail to comply with the local rules, they 'must suffer the consequences, harsh or not.'"  *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014) (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)).  The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."  *Id.* (internal quotation marks omitted).  We find it appropriate to exercise that discretion here, as Defendants also failed to file a response to Plaintiffs' Local Rule 56.1(b)(3) statement of additional facts.[1]

Second, with respect to Plaintiffs' motion for summary judgment, because Defendants failed to respond to Plaintiffs' Local Rule 56.1(a)(2) statement of facts, Dkt. # 101, those facts are deemed admitted.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) ("[F]ailure to admit or deny facts presented in the moving party's statement . . . render the facts presented by the moving party as

---

[1] In any event, the argument made in Defendants' motion for summary judgment is the same as that raised in opposition to Plaintiffs' motion for summary judgment—lack of jurisdiction.  This argument is addressed later in this Opinion.

undisputed."). "The entire purpose of the exercise outlined in the rule is to aid the Court in determining whether an issue of material fact exists such that ruling as a matter of law is inappropriate. By failing to respond, [Defendants] foisted their work upon the Court, leaving the Court in the position of searching for the answers within the record, something district judges are not required to do." *Little v. JB Pritzker for Governor*, 2021 WL 3666429, at *2 (N.D. Ill. Aug. 18, 2021).

## II. Factual Background

The following recitation of the facts comes from Plaintiffs' Local Rule 56.1 statement of facts. The Court views the facts in the light most favorable to Defendants. *See Holloway v. City of Milwaukee*, 43 F.4th 760, 765 (7th Cir. 2022).

### *The Prior Action*

Plaintiffs ("Funds") are joint multiemployer, non-governmental, employee benefit funds governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant De La Torre Funeral Home & Cremation Services, Inc. ("DLTFH"), a now-defunct corporation, participated in the Funds as a contributing employer for the benefit of employees represented by Teamsters Local Union No. 727 under applicable collective bargaining agreements ("CBAs"). At no point in time did Defendants send written notification to the Funds to cancel the agreement between the parties.

An audit of the DLTFH's payroll records covering the period November 1, 2011 through April 30, 2014 ("2014 Audit") was conducted on behalf of the Funds and found

3

DLTFH to be delinquent in its contributions to each of the Funds. In 2014, the Funds brought an action in the United States District Court for the Northern District of Illinois against DLTFH to obtain the unpaid contributions pursuant to the 2014 Audit due to them from DLTFH in Case No. 14-cv-09813 ("2014 Lawsuit"). On August 22, 2017, a judgment in the amount of $84,941.29 was entered against DLTFH in favor of the Funds in the 2014 Lawsuit, and a judgment for attorney's fees and costs was entered on October 17, 2017, in the amount of $40,778.50. A second audit was conducted in 2016 which found that DLTFH owed an additional $78,705.40 in contributions.

On or about August 13, 2018, the Funds and DLTFH agreed to stay enforcement of the judgment in the 2014 Lawsuit pursuant to a document entitled a "Settlement Agreement and Provision to Confess Judgment Upon Default" (the "Settlement Agreement"). The Settlement Agreement required DLTFH to pay to the Funds $170,000 (the "Settlement Amount") no later than 90 days after the Settlement Agreement was executed on August 15, 2018. The Settlement Amount includes the full amount of deficient contributions owed to the Funds for two audits, including only the amounts owed under both audits including liquidated damages, associated attorney fees, audit fees, and court costs. DLTFH made one payment of $50,000 to the Funds. No further payments were made. The deadline for DLTFH to make all necessary payments passed in November 2018.

On September 11, 2019, the Funds brought the instant action against DLTFH seeking calculation of the confession of judgment figure since it failed to pay the

remaining sums required by the Settlement Agreement.  It soon became known that the primary figurehead at DLTFH, Eulalio De La Torre ("Eulalio"), passed away on May 10, 2019[2].  The Funds filed their First Amended Complaint (Dkt. # 17) on February 5, 2020, which named additional individual defendants Rosa De La Torre ("Rosa"), Violeta De La Torre ("Violeta"), Edward De La Torre ("Edward"), and a new entity, Melita Incorporated d/b/a Logan Square Funeral Home ("Logan Square").  The First Amended Complaint added Count II to compel a payroll audit, and Counts III–V alleging alter ego/veil piercing liability, joint employer liability, and successor liability against the new defendants.  On June 11, 2020, the Funds filed a Second Amended Complaint ("SAC") containing revised allegations for these same counts (Dkt. # 33).  In the SAC, the Funds claim that, as of February 4, 2020, the total amount due and owing to the Funds is $214,138.50.

### De La Torre Funeral Home

DLTFH was a family business located at 2708 North Western Avenue in Chicago, Illinois.  Prior to Eulalio's death, the property was owned by Eulalio and his wife, Rosa.  The Funds allege DLTFH was owned and operated by Eulalio, Rosa, and two of their children, Violeta and Edward. While there is no evidence that Rosa had any ownership interest in DLTFH, Eulalio previously testified Rosa was the corporate secretary.

According to testimony in the 2014 Lawsuit, Violeta and Edward were given

---

[2] The Funds assert Eulalio died on May 9; however, Defendants state it was May 10.  We presume Defendants know the correct date.

stock in DLTFH by their father in 2010 and, as of March 17, 2015, Violeta and Edward each owned 20% of the stock in DLTFH. There is no evidence that either individual served as a corporate officer, and Violeta and Edward now deny having any ownership interest in DLTFH. Violeta asserts that, while her father told her of her ownership interest at some point, she never received proof of that interest, stock certificates, or financial income. Additionally, she never paid for any shares.

From 2002 through at least March 17, 2015, Violeta was employed as a funeral director for DLTFH, also performing secretarial work. Violeta received a salary of $300 per week from DLTFH. Rosa also received $300 per week, and Edward received $450 per week. However, the extent of Edward's and Rosa's duties at DLTFH is unclear from the Funds' Local Rule 56.1 statement.

Rosa and Eulalio's other daughter, Azucena De La Torre ("Azucena"), grew up in DLTFH. Prior to Eulalio's death, Azucena was a signatory on, and had a debit card for, DLTFH's account with PNC Bank. She signed checks, paid bills, and made deposits for DLTFH and ordered materials and supplies.

Eulalio passed away on May 10, 2019. After Eulalio's death, the funeral home building was used for funerals for the "few months" through the fall of that year, likely November. Violeta completed the funerals that were pending at the time Eulalio died and contacted customers after his death. DLTFH continued to pay quarterly and year end taxes. DLTFH's 2019 annual return shows DLTFH's gross income for 2019 was $156,225, a figure comparable to the gross income it reported for prior years for the full

year.

After Eulalio's death, Azucena used multiple DLTFH checks to pay several coffin companies and the Illinois Department of Revenue. Azucena, at the direction of Rosa, would make purchases of caskets and supplies and then sign checks. Violeta helped prepare some of the checks. At Rosa's request, between May 29, 2019, and December 6, 2019, Azucena made at least seven cash withdrawals from the DLTFH PNC account. On November 30, 2019, Rosa signed a $189.58 check payable to the City of Chicago, which was drawn from DLTFH's account. The PNC checking account remained open and active through January 2020, when Rosa withdrew the balance and closed the account.

### *Logan Square*

A new funeral home entity, Logan Square, was incorporated on June 28, 2019. David Daudell, counsel to DLTFH, is listed as Logan Square's registered agent. Rosa stated she used her own money to pay the initial capitalization for Logan Square in the amount of $500 on or about June 28, 2019, and put it in the Logan Square account (which had not yet been opened), though she did not remember the month of deposit. That $500 was not deposited in any account until December 2019. Logan Square's federal tax returns identify gross receipts of $12,500 for 2019, and $244,250 for 2020.

Logan Square utilizes the same location as DLTFH, the property now owned by Rosa. Rosa does not receive any rent from Logan Square. Logan Square provides the same standard funeral services that DLTFH provided, such as cremation, wake and visitation services, embalming, burials, collecting the bodies, providing caskets, coffins

and urns, flowers, and trips to the cemetery. Logan Square utilizes the same insurance company, accountant, and embalmer that DLTFH utilized.

Violeta started getting involved in Logan Square on or about November 3, 2019. She has been funeral director at Logan Square from November 2019 through the present. Violeta handles banking, and with their long-time accountant, the financial books for Logan Square. Since November or December 2019, Violeta has purchased products and supplies for running the business, paid the bills, opened the mail, received payments, made deposits, and provided the financial information to the accountant to prepare taxes for Logan Square. Both Violeta and Rosa have authority to write checks for Logan Square. Violeta and Rosa each receive $6,000 per year from Logan Square.

The Funds allege that Defendants are liable for the amount owed under the Settlement Agreement and must additionally submit to a payroll audit under the terms of the CBAs.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532

8

(7th Cir. 2013) (citation omitted).  But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment.  *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).  To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). And the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

The Second Amended Complaint includes claims for "Calculation of the Confession Judgment Figure" (Count I), "Payroll Audit of Defendants" (Count II), "Alter Ego / Veil Piercing" (Count III), Joint Employer Liability (Count IV), and

9

Successor Liability (Count V). We address Defendants' jurisdictional arguments first, and then move on to the merits of the Funds' motion for summary judgment.

## I. Jurisdiction

"A federal court must assure itself of subject matter jurisdiction in every case, even those that function to enforce a preexisting judgment." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 551–52 (7th Cir. 2021) (citing *Peacock v. Thomas*, 516 U.S. 349 (1996)). Here, the Court is secure in its subject matter jurisdiction. Defendants are correct that there is no federal cause of action for successor liability under ERISA to enforce a prior judgment. *See E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 961 (7th Cir. 2021); *Plumbers' Pension Fund Local 130, U.S.A. v. Pellegrini Plumbing, LLC*, 2023 WL 264392, at *7 (N.D. Ill. 2023). However, the Court does have jurisdiction over the alter ego claim "because it involves direct liability, not vicarious liability. That is, it is a claim that the defendant *itself* has violated ERISA." *Pellegrini Plumbing*, 2023 WL 264392, at *3 (emphasis in original); *see also McKleskey v. CWG Plastering, LLC*, 897 F.3d 899, 902–03 (7th Cir. 2018) ("In our case, the Funds argue that CWG is engaged in an ongoing violation of the NLRA and ERISA by failing to comply with an extant collective bargaining agreement."). Thus, the Court can exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a), which provides for subject matter jurisdiction over non-federal claims that "derive from a common nucleus of operative facts." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007).

## II.     The Claims

The Funds seek to hold Defendants liable for amounts due under the Settlement Agreement and CBAs entered into by DLTFH under the theories of alter ego liability, joint employer liability, and successor liability.  The Funds also seek an order requiring Defendants to permit the Funds to audit Logan Square's payroll.

### A. The Individual Defendants

At the outset, Plaintiffs have not met their summary judgment burden as to Edward under any theory of liability.  Even accepting the Funds' assertion that Edward owned 20% of the DLTFH stock (a fact which the Funds admit Edward now disputes), there is no evidence he was involved in the operation or management of DLTFH in any meaningful way that would justify holding him liable (under any of the alleged theories of liability) for any legal or contractual obligations of DLTFH.  For example, there is no evidence he was an officer or director of DLTFH, a signatory on any accounts, involved in the winding down or dissolution of DLTFH, or involved in the creation of Logan Square.  There is no evidence that Edward has any ownership interest in Logan Square.  Plaintiffs have not submitted any evidence as to the extent of Edward's involvement, if any, with Logan Square.  The Funds' motion for summary judgment is denied with respect to Edward.

We reach the same conclusion for Violeta.  Whether or not Violeta had any ownership interest in DLTFH is a disputed question of fact, and it is undisputed that Violeta has no ownership interest in Logan Square.  Despite the Funds' claims to the

11

contrary, the evidence does not establish that Violeta was a corporate officer of DLTFH. She was the funeral director at DLTFH for many years and also performed secretarial duties. There is no evidence that Violeta had any sort of involvement in the management of DLTFH's business affairs outside of those duties. She was not a signatory on any accounts. True, she is much more involved in the operation of Logan Square, but this is not sufficient to render Violeta personally liable for the debts and obligations of DLTFH. The Funds' motion for summary judgment is denied with respect to Violeta.

Rosa presents a closer call, but even the uncontested facts do not clearly establish Rosa is liable under the Funds' successor, alter ego, or joint employer theories of liability. Rosa may have been the corporate secretary for DLTFH, but she had no ownership interest in the company, and there is no evidence that she had any control whatsoever over the management and operations of DLTFH. Questions of fact surrounding Rosa and her involvement and knowledge preclude judgment as a matter of law, and so the Funds' motion for summary judgment is also denied with respect to Rosa.

### B. Logan Square

The remainder of the Court's analysis focuses on Logan Square's liability—or lack thereof—for DLTFH's debts and continuing obligations under the CBAs and Settlement Agreement.

### 1. Alter Ego Liability

The Funds argue Defendants should be held liable as alter egos of DLTFH. Liability can attach to a person or entity that was not a party to a collective bargaining agreement if the non-party is an alter ego of the signatory. *Trs. of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 789 (7th Cir. 1993); *see also Indiana Carpenters Pension Fund v. Hammond*, 2019 WL 9093756, at *8–9 (S.D. Ind. 2019) (discussing alter ego liability for individuals). The alter ego determination "focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987). Relevant factors include whether the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Int'l Union of Operating Eng'rs, Local 150, AFL—CIO v. Rabine*, 161 F.3d 427, 433 (7th Cir. 1998).

"[U]nlawful motive or intent are critical inquiries in an alter ego analysis." *Centor Contractors*, 831 F.2d at 1312. Courts consider: "1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited on the litigants by respecting the corporate entity." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp.*, 85 F.3d

1282, 1287 (7th Cir. 1996) (citing *Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 461 (7th Cir. 1991)).

While there may not be "substantially identical management" or the same ownership, there are many similarities between Logan Square and DLTFH. Logan Square is also a family business. The business purpose is the same. The address and phone number are the same. Obviously, a funeral home doesn't have "repeat customers," so to speak, but Logan Square does serve the same community. At least some of the employees are the same. There is no evidence regarding equipment.

As discussed in detail below, the facts support successor liability. However, the Funds have not met their summary judgment burden with respect to the requisite fraudulent intent for alter ego liability. Although it may be one reasonable inference, it is not the only reasonable inference to draw from the facts presented. For example, Rosa testified that DLTFH closed because she "didn't want to carry to Logan Square any problems. I wanted it to be clean, organized, and above all legal, and I did not want to have any union." Dkt. # 101-20, at 8. When asked why she didn't want to be involved with the union, Rosa stated it was because "my husband had a very bad experience with the union. There were things that were said, very strange things that were said about the union that sometimes people disappear, some very ugly things, and so I didn't want to have anything to do with that." *Id.* And when asked whether she was aware that DLTFH was delinquent in its payments to the union, and whether she

14

knew of the settlement, Rosa testified that she knew her husband gave the union some money but didn't know how much.

This testimony suggests the reason (or at least one of the reasons) Rosa wanted to start fresh without union involvement was because she saw the strain it put on Eulalio and believed it contributed to his death. It does not suggest that Rosa started Logan Square just to avoid DLTFH's obligations under the Settlement Agreement or CBAs. Rosa may have believed the issue was resolved, even if her proximity to Eulalio suggests otherwise.

The Funds make much of the fact that the DLTFH PNC bank account was active through the end of 2019. Azucena continued to write checks for supplies and services and make withdrawals through December 2019. What is unclear from the record, however, is when DLTFH operations ceased and when Logan Square officially opened. Were the checks written for work or services provided under the DLTFH name, or were they for Logan Square operations? Were these checks written to pay DLTFH invoices? We know that Logan Square was incorporated in June 2019, but the Funds do not point to evidence showing when DLTFH was fully dissolved and when Logan Square become fully operational. In their motion, the Funds argue the timing is suspicious, claiming that Rosa and Violetta moved to make Logan Square operational within a month of DLTFH's appearance in this case. If true, such a fact might raise some eyebrows. But the evidence cited by the Funds does not establish this fact beyond dispute.

### 2. Joint Employer Liability

The Funds argue that Defendants are liable under a joint employer theory because they are alter egos and therefore subject to all of the legal and contractual obligations of DLTFH. Because questions of fact exist precluding summary judgment on the alter ego claims, summary judgment is also inappropriate under the joint employer claim.

### 3. Successor Liability

Successor liability is an equitable doctrine that can be used to hold one entity responsible for the obligations of another where there are sufficient indicia of continuity between the two entities and the alleged successor has notice of the predecessor's liability. *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 956–57 (7th Cir. 2021). Although successor liability traditionally applied only when assets were sold, it is an equitable doctrine that has been extended to encompass "any reorganization that results in a substantial continuation of the business by the successor and either obliterates the previous business or leaves it as an 'empty shell'." *Cent. States, Se. & Sw. Areas Pension Fund v. TAS Inv. Co. LLC*, 2013 WL 1222042, at *7 (N.D. Ill. 2013) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Wiseway Motor Freight, Inc.*, 2000 WL 1409825, at *6 (N.D. Ill. 2000)).

In determining the satisfaction of the notice prong, courts look to "facts that conclusively demonstrate actual knowledge" or "evidence that allows the fact finder to

16

imply knowledge from the circumstances." *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990); *see also Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014) (notice may be actual or "implied from a variety of circumstances, such as common control or proximity."). Here, the undisputed evidence shows that notice may be imputed to Logan Square through Rosa. Although she had no ownership interest in DLTFH, it was a family business. Rosa was married to Eulalio, earned a salary for her work at DLTFH, and was aware of the 2014 Lawsuit and settlement of the Funds claims against DLTFH. She knew Eulalio paid the union some amount of money, although she did not know the specifics. However, her general knowledge is sufficient for purposes of successor liability because the successor need not know the precise extent of the liability. *Tsareff v. Manweb Servs.*, 794 F.3d 841, 847 (7th Cir. 2015); *Wis. Laborers Pension Fund v. Bristol Grp. LLC*, 2020 WL 128421, at *4 (W.D. Wis. 2020). Rosa also testified that one of the reasons she created Logan Square was because she wanted nothing to do with the union. The notice prong of the analysis is satisfied.

Next, the continuity element. The determination of whether there is sufficient continuity for one company to be a successor of another company is a factual question to be decided based on the totality of the circumstances. *Chicago Reg'l Council of Carpenters Pension Fund v. Estate Installations*, 2013 WL 500833, at *2 (N.D. Ill. 2013). In making this determination, the Court considers "whether the business of both employers is essentially the same; whether the employees of the new company are doing

17

the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.*

Here, there was no asset transfer, and there is no shared ownership. However, Logan Square was incorporated to, and does, provide the same standard funeral services as DLTFH. Logan Square is owned and operated by the De La Torre family, namely Rosa and Violeta. Logan Square uses the same or similar suppliers, insurance and worker's compensation carriers, tax and CPA professionals, and embalmers. Logan Square is located at the same property and uses the same phone number. The available facts demonstrate that Logan Square took on nearly every aspect of DLTFH's former business and therefore the Court finds the requisite continuity for successor liability. *See*, *e.g.*, *Sullivan*, 739 F.3d at 358 (assessing leadership, employees, customers, office space, equipment, and services to determine successor liability under ERISA); *Laborers' Pension Fund v. Total Home Restoration 1*, 2022 WL 4079459, at *14 (N.D. Ill. 2022) ("Little changed, except the name on the door. If anything, the transfer could hardly have been more seamless.").

As successor to DLTFH, Logan Square bears responsibility for the liabilities of DLTFH, and has incurred liabilities in its own right under the applicable CBAs. *See id.* at *15 ("As the successor, JK Installation stood in Total Home's shoes. Those shoes, in turn, stood on a collective bargaining agreement. So JK Installation had an obligation to pay contributions for fringe benefits and union dues under the collective bargaining

agreement.").  The Funds are entitled to summary judgment on their theory of successor liability.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Defendants' Motion for Summary Judgment [100] is denied and the Funds' Motion for Summary Judgment [99] is granted-in-part and denied-in-part as set forth above.  Telephonic status hearing is set for August 22, 2023, at 10:30 a.m.  The parties shall meet and confer as to the calculation of the confession of judgment as well as a payroll audit and be prepared to address the issues at the status hearing.

It is so ordered.

Dated:  July 20, 2023

_____
Charles P. Kocoras
United States District Judge